[No. 13756. Department Two. — December 23, 1890.]

COUNTY OF SAN BERNARDINO, APPELLANT, v. THEODORE REICHERT, SURVEYOR-GENERAL, RESPONDENT.

COUNTY BOUNDARY — STATUTORY CONSTRUCTION — REFERENCE TO MEXICAN GRANTS — SURVEY — PATENTS. — The acts organizing the counties of San Bernardino and San Diego, and fixing the common boundary between them with reference to the lines of certain Mexican grants, must be construed as intending to adopt a line that could thus be definitely fixed; and an official survey of the grants which had been theretofore made and recorded is proper evidence of the location of the boundary, though not finally approved as the basis of patents confirming the grants, in preference to a subsequent survey, upon which the patents were based.

ID. — MANDAMUS TO SURVEYOR-GENERAL — QUESTION OF TITLE — INTENTION OF LEGISLATURE. — Even if the courts have jurisdiction to control the surveyor-general by *mandamus* in the matter of a survey of a county boundary, the proceeding does not involve any question of title to real property, or of the correct boundaries of land as between private claimants, although the act establishing the boundary may refer to private grants; but the sole question is as to the intention of the legislature in fixing the boundary at the time of adopting the line.

Appeal from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Harris & Gregg, Waters & Gird,* and *H. O'Connor,* for Appellant.

*J. L. Copeland,* and *Brunscn, Wilson & Lamme,* for Respondent.

The Court. — In July, 1887, the county of San Bernardino applied to the respondent, surveyor-general of .the state, to survey the boundary line between said county and the county of San Diego. While the respondent was proceeding to perform that duty, the appellant filed a petition in the superior court, alleging, in substance, that he was proceeding to survey and run said boundary in a certain manner that was wrong, and upon a false theory, and praying for a writ of mandate compelling him to run the line in a certain other manner, which is alleged to be the right manner. The court rendered judgment against the appellant, who appeals from the judgment, and from an order denying a new trial.

The act organizing the county of San Bernardino was passed April 26, 1853. (Stats. 1853, p. 119.) By that act the northern boundary line of San Diego County (which had been previously organized) is made the southern boundary of San Bernardino County. (The boundaries of the two countries were afterwards substantially incorporated, in sections 3943 and 3944 of the Political Code.) The common boundary line between the two counties, as described in the acts organizing them, makes several express references to points on and lines of two certain ranchos, called San Jacinto Nuevo and San Jacinto Viejo. At the time of the passage of said act of April 26, 1853, these ranchos were known as Mexican grants; and one Hancock, a deputy United States surveyor, under direc-

tions of the proper authorities, had made and placed on record a survey of said ranchos. Afterwards, in 1880, a United States patent issued for the Viejo rancho; and in 1882, one Minto, a United States deputy surveyor, made a survey of the Nuevo rancho, upon which, in 1884, a United States patent issued for said last-named rancho. The Hancock survey does not appear to have been finally approved, and was not adopted as the basis for either of said patents. Appellant contends that the respondent, in running the line between the two counties, should have followed the lines of the ranchos as afterwards established by the Minto survey and the United States patents; while respondent contends that it was the intention of the legislature to determine what the boundary line was at and immediately after the passage of the act of 1853 organizing the county; that he should carry out that intention, and that in doing so, he may consider the Hancock survey as tending to show where the legislature at that time intended to fix the line. The court adopted the view of the respondent, and admitted in evidence the said Hancock survey; and we are not able to see that in so doing any error was committed.

This proceeding does not involve any question of title to real property, or of the correct boundaries of land, as between private claimants. In determining any such question with respect to said ranchos, of course, the lines of the patents would govern. But the legislature, when, in 1853, it passed the said act organizing said county, had power to fix the boundary line wherever it pleased, and for that purpose to adopt any description deemed proper to express its intention. It was the duty — and it certainly may be presumed to have been the intention — of the legislature to adopt a line that could be *then definitely fixed.* It cannot be presumed that the intention was to describe a line that could not properly be ascertained until the lapse of some indefinite period, when the United States government (over which there was no con-

trol) should see fit, for other purposes, to issue patents for said ranchos; thus deliberately providing for the evils which must certainly come from an unknown and unknowable boundary between two municipal corporations. The Minto survey and the patents were not in existence until from twenty-three to thirty years after the passage of the act organizing the county. It furthermore appears that parts of the description of the line as expressed in the act cannot be applied to the Minto survey, while they do correspond with the Hancock survey. Our conclusion is, that no error was committed by the court below.

We do not, however, wish to be understood as deciding that the courts have jurisdiction to control the surveyor-general in the matter here involved. Section 3872 of the Political Code provides that his action in such a case shall be "conclusive"; and in *People* v. *Boggs*, 56 Cal. 648, this court seems to have held that section not to be unconstitutional. But counsel for respondent do not make the point in their briefs or arguments, and we do not care to pass upon the question without fuller discussion.

Judgment and order affirmed.